AUSA: Mostafa Khairy

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **25 MAG 2309** |
| UNITED STATES OF AMERICA<br><br>v.<br><br>MIGUEL FRANCISCO MORA NUNEZ, and<br>CHRISTHIAN AYBAR-BERROA,<br><br>                                Defendants. | **COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 922(g)(5) and 3<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

ANTONIO BOLFO, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

**COUNT ONE**
**(Possession of Ammunition by an Illegal Alien)**

1. On or about July 19, 2025, in the Southern District of New York and elsewhere, MIGUEL FRANCISCO MORA NUNEZ, the defendant, knowing that he was illegally and unlawfully in the United States, knowingly possessed ammunition, to wit, one live Sig Sauer cartridge and one PMC cartridge casing, and the ammunition was in and affecting commerce.

(Title 18, United States Code, Section 922(g)(5).)

**COUNT TWO**
**(Accessory After the Fact to Possession of Ammunition by an Illegal Alien)**

2. From at least on or about July 19, 2025, up to and including on or about July 21, 2025, in the Southern District of New York and elsewhere, CHRISTHIAN AYBAR-BERROA, the defendant, knowing that an offense against the United States had been committed, to wit, that an illegal alien had knowingly possessed ammunition, as charged in Count One, received, relieved, comforted, and assisted an offender in order to hinder and prevent his apprehension, trial, and punishment.

(Title 18, United States Code, Section 3.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3. I have been involved in the investigation of this matter, and I base this affidavit on that experience, as well as on my conversations with other law enforcement officers, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable case, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and

conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

4.  On or about July 19, 2025, an individual later identified as MIGUEL FRANCISCO MORA NUNEZ, the defendant, shot an off-duty Customs and Border Patrol ("CBP") Officer ("Victim-1") in Manhattan, New York. The bullet MORA NUNEZ fired struck Victim-1 in the face and right arm. Victim-1 then appears to return fire, hitting MORA NUNEZ twice, before MORA NUNEZ fled on a motorbike (the "Motorbike") driven by CHRISTHIAN AYBAR-BERROA, the defendant. AYBAR-BERROA assisted MORA NUNEZ in fleeing the scene on the Motorbike and then drove MORA NUNEZ to a hospital. Thereafter, as described below, AYBAR-BERROA alerted others that he and MORA NUNEZ had been involved in a shootout, and delivered the clothes AYBAR-BERROA was wearing to one of MORA NUNEZ's relatives in exchange for different clothes. AYBAR-BERROA later admitted that he gave MORA NUNEZ's relative AYBAR-BERROA's clothing from the shooting because it was bloody, and they needed to get rid of his bloody clothes.

5.  Law enforcement officers identified MORA NUNEZ and learned that he been arrested multiple times in New York state, and, prior to that, had unlawfully entered the United States in approximately April 2023, from which he has a final order of removal.

## The July 19, 2025 Shooting

6.  Based on my participation in this investigation, including my conversations with other law enforcement officers and my review of body-worn camera footage, video surveillance footage, and law enforcement reports and records, I have learned, among other things, the following:

    a.  On or about July 19, 2025, at approximately 11:45 p.m., MIGUEL FRANCISCO MORA NUNEZ and CHRISTHIAN AYBAR-BERROA, the defendants, were riding the Motorbike, in the vicinity of Fort Washington Park, in Manhattan, New York. AYBAR-BERROA was driving the Motorbike and MORA NUNEZ was riding as a passenger, seated on the Motorbike behind AYBAR-BERROA.

    b.  At approximately 11:45 p.m., in the vicinity of Fort Washington Park, MORA NUNEZ and AYBAR-BERROA robbed a female individual (the "Female Victim") of her cellphone, during which MORA NUNEZ used force to obtain the Female Victim's cellphone while AYBAR-BERROA remained at or near the Motorbike. During the struggle with MORA NUNEZ, the Female Victim observed a bulge at the front of MORA NUNEZ's waistband, which she believed to be either a gun or knife, so she let go of her cellphone. MORA NUNEZ and AYBAR-BERROA fled on the Motorbike.

    c.  Approximately a few minutes later, about 100 yards from where MORA NUNEZ and AYBAR-BERROA had stolen the cellphone from the Female Victim, while still in the vicinity of Fort Washington Park, MORA NUNEZ and AYBAR-BERROA, on the Motorbike, drove past Victim-1, along with an individual accompanying Victim-1 ("Victim-2," and together with Victim-1, the "Victims").

2

       d.  AYBAR-BERROA, who was wearing a red t-shirt and grayish pants, was driving the Motorbike, while MORA NUNEZ, who was wearing a white t-shirt, grayish pants, a hat, and a mask (which is not visible in the picture below), rode on the Motorbike seated behind AYBAR-BERROA. MORA NUNEZ and AYBAR-BERROA are circled in the image below in red (right); and Victim-1 and Victim-2 are circled in blue (left). *See* **Image-1**.


**Image-1**

       e.  AYBAR-BERROA and MORA NUNEZ drove the Motorbike past the Victims, who were sitting near a river, before stopping the Motorbike. MORA NUNEZ got off the Motorbike and approached the Victims, while AYBAR-BERROA, still driving the Motorbike, turned the Motorbike around, toward the direction from which AYBAR-BERROA and MORA NUNEZ had approached, apparently in preparation to flee ("**Image-2**").


**Image-2**

3

       f.   MORA NUNEZ then approached the Victims while brandishing a firearm (the "Firearm") and wearing a mask.

       g.   MORA NUNEZ fired the Firearm at least twice, with at least one bullet striking Victim-1 in the face and right arm. Victim-1 appears to have returned fire, firing his CBP service weapon, a Glock 9mm pistol, approximately twice, striking Suspect-1 in the leg and groin area.

       h.   After being shot, MORA NUNEZ ran back towards the Motorbike, holding his leg and groin area ("**Image-3**"). AYBAR-BERROA was on the Motorbike, ready to flee the scene. MORA NUNEZ got back on the Motorbike, and AYBAR-BERROA sped away.


**Image-3**

7.   Following the Shooting, law enforcement officers recovered one live Sig Sauer cartridge and one spent PMC casing (the "Ammunition"). The Ammunition are both .380 caliber cartridges and could not have been fired from Victim-1's service weapon.

8.   I have communicated with a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives who is familiar with the manufacturing of firearms and ammunition and who confirmed that the Ammunition was manufactured outside of the State of New York.

### Law Enforcement Identifies Mora Nunez

9.   Based on my participation in this investigation, including my conversations with law enforcement officers and my review of video surveillance footage and law enforcement reports and records, I have learned, among other things, the following:

       a.   On or about July 20, 2025, at approximately 12:04 a.m., *i.e.*, less than approximately 20 minutes after the Shooting, MIGUEL FRANCISCO MORA NUNEZ and CHRISTHIAN AYBAR-BERROA, the defendants, arrived at a hospital located in the vicinity of 1650 Grand Concourse, in the Bronx, which is approximately 2.1 miles from the location of the Shooting (the "Hospital"). MORA NUNEZ and AYBAR-BERROA can be seen on surveillance video driving on the Motorbike to the emergency room entrance of the Hospital. *See* **Image-4**, circled in red.

4



**Image-4**

b. Then, approximately a few seconds later, AYBAR-BERROA (still wearing a red shirt), while remaining on the Motorbike, appears to drop off MORA (still wearing a white shirt) inside the parking area of the emergency room entrance. *See* **Image-5**, circled in red.



**Image-5**

5

      c. A few seconds after that, AYBAR-BERROA, still driving the Motorbike, drives out of the Hospital alone. *See* **Image-6**, circled in red.



**Image-6**

      d. Based on my review of video surveillance of the Shooting and from the Hospital, I believe that the Motorbike in **Image-4**, **Image-5**, and **Image-6**, *i.e.*, at the Hospital, appears to be the same Motorbike used by MORA NUNEZ and AYBAR-BERROA during the Shooting; and that AYBAR-BERROA appears to be wearing the same clothes from the Shooting, *i.e.*, the red shirt and grayish pants, when dropping off MORA NUNEZ at the Hospital.

      e. MORA NUNEZ was admitted to the Hospital with multiple gunshot wounds to his legs and groin area. Below is a picture of the pants MORA NUNEZ was wearing when he entered the Hospital, which appear to be grayish in color and to have two holes in them—one in the groin area and a second in the leg area—consistent with the pants MORA NUNEZ is wearing in the video of the Shooting and also with the entry points of his gunshot wounds ("**Image-7**").


**Image-7**

10. Based on my conversations with other law enforcement officers, I have learned, among other things, the following:

a. Based on my training and experience, I know that New York City Police Department ("NYPD") personnel are assigned to each hospital in the New York City area. After MIGUEL FRANCISCO MORA NUNEZ, the defendant, entered the Hospital, he reported to Hospital personnel that he had suffered gunshot wounds, whereupon Hospital personnel advised the NYPD personnel in the Hospital of the same. Following that, NYPD personnel staffed to the Hospital called the local NYPD precinct to alert them that an individual with gunshot wounds had been admitted to the Hospital.

b. On or about July 20, 2025, at approximately 12:45 a.m.—less than an hour after MORA NUNEZ had arrived at the Hospital—NYPD detectives from Manhattan North Homicide arrived at the Hospital. The detectives approached MORA NUNEZ, who was not then in NYPD custody because the NYPD personnel at the Hospital did not know MORA NUNEZ's identity or that he had been involved in the Shooting, and asked MORA NUNEZ for basic information, such as his name and date of birth, and how he had suffered the gunshot wounds. MORA NUNEZ told the NYPD Detectives that his name was "Frank Perez." MORA NUNEZ also stated that he resided at a particular address located in the Bronx, New York ("Address-1").

c. Law enforcement officers then searched Address-1 in NYPD databases and identified a "Miguel Mora," who had two prior arrests in New York state, including an arrest by NYPD on or about October 1, 2024. According to an NYPD arrest report from on or about October 1, 2024, when MORA NUNEZ was arrested, he provided Address-1 as his home address.

d. Through additional searching of law enforcement databases, law enforcement officers also obtained an NYPD Domestic Incident Report, dated on or about November 21, 2024, reflecting that MORA NUNEZ's significant other had provided MORA NUNEZ's home address

7

as a second particular address located in the Bronx, New York, as MORA NUNEZ's home address ("Address-2").

e. Law enforcement officers obtained a photograph of "Miguel Mora" taken in connection with his October 1, 2024 arrest and compared it to the individual in the Hospital, whom the officers positively identified as MIGUEL FRANCISCO MORA NUNEZ.

### MORA NUNEZ's Status as an Alien Illegally and Unlawfully in the United States

11. Based on my review of immigration records regarding MIGUEL FRANCISCO MORA NUNEZ, the defendant, and my conversations with other law enforcement officers about the same, I have learned, among other things, the following:

a. MORA NUNEZ is a native and citizen of the Dominican Republic, with a date of birth of October 5, 2003. He is not, and has never been, a citizen of the United States.

b. On or about April 1, 2023, MORA NUNEZ entered the United States from Mexico unlawfully through the San Luis, Arizona, border.

c. MORA NUNEZ was not then admitted or paroled into the United States after inspection by an immigration officer. Rather, MORA NUNEZ was advised that he had entered the United States unlawfully and temporarily detained by CBP officers, before being released.

d. On or about April 2, 2023, MORA NUNEZ was served in person with a Notice to Appear ("NTA"). MORA NUNEZ was charged as removable from the United States under INA § 212(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

e. On or about July 16, 2023, a DHS law enforcement officer issued a Superseding NTA, by mail, to MORA NUNEZ, which charged him as removable from the United States under INA § 212(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

f. The Superseding NTA was mailed to Address-2 (*see supra* ¶ 10(d)), directing MORA NUNEZ to appear at the New York Broadway Immigration Court on February 21, 2024. MORA NUNEZ did not appear on that date as ordered.

g. On or about November 6, 2024, an immigration judge ordered MORA NUNEZ removed, *in absentia*, for failing to appear for his proceedings.

### AYBAR-BERROA's Concealment of Evidence

12. Based on my participation in this investigation, including my review of records and reports, my review of video surveillance, my conversations with other law enforcement officers, and my participation in witness interviews, I have learned, among other things, the following:

8

        a. Sometime after the Shooting, on or about July 20, 2025, CHRISTIAN AYBAR-BERROA, the defendant, contacted an individual ("Individual-1") and informed Individual-1 that AYBAR-BERROA and MIGUEL FRANCISCO MORA NUNEZ, the defendants, had been in a shootout.

        b. Individual-1 then contacted a family member of MORA NUNEZ's ("Relative-1") and informed Relative-1 of the same, *i.e.*, in substance, that AYBAR-BERROA and MORA NUNEZ had been in a shootout. At some point thereafter, Relative-1 contacted AYBAR-BERROA stating that they needed to meet in person.

        c. Relative-1 and AYBAR-BERROA met, at which point AYBAR-BERROA provided Relative-1 with his clothes, *i.e.*, the red shirt and grayish pants he was wearing during the Shooting. Relative-1 then provided AYBAR-BERROA with clothing belonging to MORA NUNEZ to change into.

### AYBAR-BERROA's Status as an Alien Illegally and Unlawfully in the United States

        13. Based on my review of immigration records regarding CHRISTHIAN AYBAR-BERROA, the defendant, I have learned, among other things, the following:

        a. AYBAR-BERROA is a native and citizen of the Dominican Republic, with a date of birth of November 4, 2002. He is not, and has never been, a citizen of the United States.

        b. On or about June 19, 2022, AYBAR-BERROA entered the United States from Mexico unlawfully by crossing the Rio Grande River near Eagle Pass, Texas.

        c. AYBAR-BERROA was not then admitted or paroled into the United States after inspection by an immigration officer. Rather, AYBAR-BERROA was advised that he had entered the United States unlawfully and detained by CBP officers. AYBAR-BERROA was placed in expedited removal proceedings.

        d. On or about July 22, 2022, AYBAR-BERROA was served in person with an NTA. AYBAR-BERROA was charged as removable from the United States under INA § 212(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. AYBAR-BERROA signed the NTA confirming its receipt. The NTA contained an appearance date for August 19, 2022, directing AYBAR-BERROA to appear at the San Antonio Immigration Court, which was later rescheduled to January 3, 2023.

        e. On or about January 3, 2023, an immigration judge ordered AYBAR-BERROA removed, *in absentia*, for failing to appear for his proceedings.

        f. Based on information provided by Relative-1, and subsequent investigation, law enforcement officers were able to track the location of AYBAR-BERROA to a particular location in Queens, New York.

        g. On or about July 21, 2025, at approximately 3:00 a.m., AYBAR-BERROA was taken into immigration custody in Queens, New York.

**AYBAR-BERROA's Voluntary Interviews with Law Enforcement**

14. Based on my participation in this investigation, I have learned that, on or about July 21, 2025, CHRISTHIAN AYBAR-BERROA, the defendant, participated in two voluntary interviews with law enforcement officers. During those interviews, AYBAR-BERROA stated, among other things, the following:

a. AYBAR-BERROA admitted he was present during the Shooting.

b. AYBAR-BERROA claimed he did not know MIGUEL FRANCISCO MORA NUNEZ, the defendant, had robbed the Female Victim of her cellphone. He further claimed he did not know that MORA NUNEZ possessed a firearm on July 19, 2025.

c. AYBAR-BERROA admitted that he met with Relative-1 and gave Relative-1 his clothes from the Shooting, *i.e.*, the red shirt and grayish pants.

d. AYBAR-BERROA admitted he gave Relative-1 his clothing from the Shooting, *i.e.*, the red shirt and grayish pants because they were bloody, and they needed to get rid of the bloody clothes.

e. AYBAR-BERROA admitted he knew he was present in the United States unlawfully.

f. AYBAR-BERROA admitted he knew MORA NUNEZ was present in the United States unlawfully.

WHEREFORE, I respectfully request that warrants be issued for the arrests of MIGUEL FRANCISCO MORA NUNEZ and CHRISTHIAN AYBAR-BERROA, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

        s/ Antonio Bolfo /otw
ANTONIO BOLFO
Special Agent
Homeland Security Investigations

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this  23rd  day of July, 2025.

_____
THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK